# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

MACHELLE PEARSON, and
MARIA SHELDON, on behalf
of themselves and others similarly
situated,

      Plaintiffs,

                                      Case No. 2:19-cv-10707

v.                                        Hon.

MICHIGAN DEPARTMENT OF
CORRECTIONS, HEIDI
WASHINGTON, in her individual
capacity, SHAWN BREWER, in his individual
capacity, and CORIZON HEALTH,
INC., a Delaware Corporation,

      Defendants.

_____/

JONATHAN R. MARKO (P72450)
**Ernst & Marko Law, PLC**
Attorney for Plaintiffs
645 Griswold Street, Ste. 4100
Detroit, MI 48226
P: (313) 965-5555
F: (313) 965-5556
jon@ernstmarkolaw.com

MATTHEW H. MORGAN (MN 304657)
ROBERT L. SCHUG (MN 0387013)
**Nichols Kaster, PLLP**
Co-Counsel for Plaintiffs
80 South Eighth Street, Ste. 4600
Minneapolis, MN 55402
P: (612) 256-3200
F: (612) 338-4878

645 GRISWOLD ST
SUITE 4100
DETROIT, MI 48226

ERNSTMARKOLAW.COM
(313) 965-5555

ERNST & MARKO LAW

morgan@nka.com
schug@nka.com
_____

## COMPLAINT AND JURY DEMAND

Plaintiffs Machelle Pearson and Maria Sheldon, on behalf of themselves and members of the proposed Classes below, and by and through counsel Ernst & Marko Law, PLC and Nichols Kaster, PLLP, state as follows for their Complaint against the above-named Defendants:

## INTRODUCTION

Huron Valley Correctional Facility for Women ("HVCF") is operating under a state of degradation, filth, and inhumanity, endangering the health and safety of the incarcerated women and staff alike on a daily basis. HVCF is underfunded, understaffed, poorly administered, and intentionally overcrowded, giving rise to a chaotic and perilous environment inside the prison walls. Incarcerated women are regularly denied access to adequate medical and mental health care, hygienic conditions, and movement. As a result, the women incarcerated in HVCF were exposed to *Sarcoptes scabiei* ("scabies"), caused by the spread of parasitic mites. The scabies took a huge toll on these women, both physically and mentally, because it caused horrendous, unbearable itching pain. The women complained for years but Defendants made the conscious decision to do nothing. Defendants did not even provide a licensed dermatologist to examine and treat the women's

2

obvious symptoms. In fact, one brave doctor had to fight his way into the prison before the hundreds of women locked in HVCF finally had access to the critical, life-saving treatment they so desperately needed.

As discussed below, conditions at HVCF have deteriorated to such a degree as to expose Plaintiffs and the putative class members to an unreasonable risk of serious harm to their health and safety, in violation of the rights guaranteed to them under the United States Constitution. Defendants have long been on notice of the horrific conditions and constitutional deprivations occurring daily at HVCF yet have failed to timely or effectively remedy the deplorable state of affairs.

This is a civil rights class action, brought under 42 U.S.C. § 1983, challenging the inhumane, dangerous, and unconstitutional conditions endured by the women locked inside HVCF. Plaintiffs Pearson and Sheldon, on behalf of themselves and members of the proposed Classes, seek monetary damages, and injunctive and declaratory relief.

## JURISDICTION AND VENUE

1.     Jurisdiction of this Court is invoked pursuant to 42 U.S.C. § 1983, and jurisdiction is therefore proper pursuant to 28 U.S.C. §§ 1331 and 1343.

2.     Venue is proper in this District under 28 U.S.C. § 1391. The parties reside, or at the time the events took place, resided in this judicial district, and the

events giving rise to Plaintiffs' claims also occurred in this judicial district. Defendants are subject to this Court's personal jurisdiction.

3.      Defendant Corizon Health, Inc. ("Corizon") is a corporation incorporated in Delaware that does a substantial amount of its systematic and continuous business in Michigan as "Corizon of Michigan", and has been registered to do business in Michigan since 2000.

4.      Corizon is the Michigan Department of Corrections' private health care contractor and provides health services to Michigan prisons, including HVCF. At all material times, Corizon held a multi-million-dollar prison health contract with the State of Michigan to provide such services.

## PARTIES

5.      Plaintiff Machelle Pearson is a woman residing in Dearborn Heights, Michigan. Pearson was formerly incarcerated at HVCF and was paroled in August 2018. Pearson brings this Complaint on behalf of herself and the proposed classes, as described herein.

6.      Plaintiff Maria Sheldon is a woman currently incarcerated at HVCF. Sheldon brings this Complaint on behalf of herself and the proposed classes, as described herein.

7.      Defendant Michigan Department of Corrections ("MDOC") is a Michigan governmental agency that operates HVCF.

4

8.     Defendant Heidi Washington, at all relevant times, was the director of the Michigan Department of Corrections.

9.     Defendant Shawn Brewer, at all relevant times, was the warden of HVCF. HVCF is a prison for women located in Washtenaw County, Michigan. It is the only prison in Michigan that houses women.

10.    Defendant Corizon describes itself as "the correctional healthcare pioneer and leader for 40 years." Corizon conducts a substantial part of its systematic and continuous business in the Eastern District of Michigan. At all relevant times, Corizon provided health care services for MDOC at HVCF.

## FACTUAL ALLEGATIONS

11.    Plaintiffs, by reference, incorporate the preceding paragraphs as though fully set forth herein.

12.    Plaintiffs Pearson and Sheldon were/are inmates of HVCF and bring this action on behalf of similarly situated former, current, and future inmates of HVCF.

13.    HVCF houses pretrial detainees as well as convicted women. The facility houses substantially more than 2,000 women at any given time.

14.    At any one time, the Gladwin Unit at HVCF houses approximately 160 women and is separated into A and B Sections.

15.    HVCF is currently the only women's prison in the state of Michigan.

16.     At all material times, the actions and/or omissions alleged herein occurred under color of state law, and the individual employees of the Defendants were acting within the scope and course of their employment.

17.     At all material times, Defendant MDOC employed Defendant Washington, Director of MDOC, and Defendant Stewart, Warden of HVCF, both of whom initiated and carried out the policies, practices, and customs of MDOC, and are also liable for their own actions and/or omissions.

18.     The conditions of HVCF, specifically in the Gladwin Unit, are filthy and dangerous. At all material times, black mold was found in the Gladwin Unit.

19.     The mold in the Gladwin Unit was so notoriously bad that it had eaten away an entire corner of the tile ceiling in the shower area.

20.     Further, because the shower area in the Gladwin Unit lacks proper ventilation, condensation drips on the women and their clothes while they shower and would not properly dry.

21.     Additionally, while Defendants MDOC, Washington, and Stewart used to allow the incarcerated women to clean with bleach, they changed that practice and began providing significantly diluted cleaning agents that do not adequately clean the aggressive mold or other filth.

22.     Defendants MDOC, Washington and Stewart were aware of the conditions and did nothing to remedy the dangerous condition.

**Scabies**

23.    Scabies is an infestation. Tiny mites, known as *Sarcoptes scabiei*, live in the outer layers of human skin. As the mites burrow and lay eggs, the infestation leads to relentless itching and rashes. (See https://www.webmd.com/skin-problems-and-treatments/ss/slideshow-scabies-overview).

24.    Scabies is contagious and typically spreads through skin-to-skin contact, but that is not the only means of transmission. (See https://www.aad.org/public/diseases/contagious-skin-diseases/scabies#overview). Shared personal items such as bedding, clothes, furniture or towels may also cause the spread. (Id.)

25.    It is well-known that prison inmates can be at a higher risk for acquiring scabies. (See https://www.webmd.com/skin-problems-and-treatments/ss/slideshow-scabies-overview).

26.    Scabies infestations lead to relentless and unbearable itching, especially at night. The rash results can appear as small red bumps, welts or scaly lesions that can transform into scales, blisters, bleeding, and open sores caused by scratching. (See https://www.verywellhealth.com/scabies-overview-1069441). The scabies rash typically occurs on the wrists, in between fingers, in armpits, around the waist and in the genital area. (Id.)

27.    Due to the severity of the itching at night, those infested with scabies can demonstrate an inability to sleep. (see https://www.aad.org/public/diseases/contagious-skin-diseases/scabies#symptoms). The inability to sleep and perpetual discomfort can result in mental illness and/or severe emotional distress. The infestation can result in permanent, visible scarring.

28.    Doctors should be able to identify scabies based on the appearance of the rash and the description of the itch. Other standard tests can also be used to diagnose such condition. (See https://www.webmd.com/skin-problems-and-treatments/ss/slideshow-scabies-overview).

29.    Defendants' systemic failure to provide livable conditions in the Gladwin Unit and provide the basic medical care and treatment to inmates resulted in an outbreak of scabies, which spread throughout the Gladwin Unit at HVCF.

30.    Further, Defendants did not provide a medical screening for scabies prior to placing inmates in the general population at the facility. Defendants did not employ any person or implement any protocol to screen individuals for infectious diseases or parasites, enabling the introduction and spread of diseases from new arrivals to the inmate population.

**History of the rash**

31.    In or around November 2016, detainees and inmates housed in the Gladwin Unit at HVCF began complaining to Defendants about horrible itching and rashes they were developing.

32.    The rashes women developed caused red bumps to appear on the inner thighs, buttocks, arms, backs, and chests of those afflicted, and caused unbearable pain from itching.

33.    The rash and itching can be so unbearably painful that many of the women will likely suffer scarring because of the rash itself, as well scratching to find relief from the horrendous itching.

34.    For example, Plaintiff Pearson's rash was so bad that she has scars around her ankles and feet.

35.    Despite repeated complaints to Defendants about the rashes, according to published newspaper articles, in February 2018, Defendants "ruled out" scabies as the main source of the rash outbreak. (See Detroit Free Press article, dated Jan. 18, 2019 titled "How Flint MD solved rash mystery that stumped women's prison officials.")

36.    Defendants administered prescription steroid cream, claiming that it had been effective for some of the afflicted women.

37.     When the steroid cream did not work, Defendants advised the women to try mixing the steroid cream and other ointments together to try to remedy the rash.

38.     Unsurprisingly, this haphazard mixture did not provide any relief to the afflicted women who's suffering only worsened as the year continued.

39.     Although the women received unhelpful medication and medical advice, Defendants took no other action to sufficiently quarantine infested individuals from the general population until 2019.

40.     It was not until winter of 2018 when Defendants realized they may have misdiagnosed the source of the rash. Around that time, some women were allegedly treated for scabies, and clothing and bed linens were allegedly replaced. (See Detroit Free Press article, dated Jan. 5, 2019 titled "Scabies found on 24 women at state prison.")

41.     According to the January 5, 2019 article referenced in paragraph 35 above, in the winter of 2018 Defendants brought in a dermatologist who's testing and medication recommendations were ineffective. (Id.)

42.     In fact, it wasn't until a second dermatologist, Dr. Walter Barkey, a dermatologist from Flint, visited HVCF in late December 2018 to meet with inmates, that a diagnosis of scabies was made.

43.     Dr. Barkey, who had read reports about the rash outbreak and received information firsthand from a friend whose daughter is an inmate at HVCF, reached out to Defendants to offer to examine and treat the afflicted prisoners. (See Detroit Free Press article, dated Jan. 18, 2019 titled "How Flint MD solved rash mystery that stumped women's prison officials.")

44.     Dr. Barkey had several telephone interviews with Defendants to see inmates at the facility before he was allowed access. (See Detroit Free Press article, dated Jan. 18, 2019 titled "How Flint MD solved rash mystery that stumped women's prison officials.")

45.     Dr. Barkey brought a microscope with him to the facility and was able to detect samples of the live mites from skin scrapings of some women and determine their rashes were scabies. (Id.)

46.     Defendants maintain that previous skin scraping samples they studied were negative for scabies. (Id.)

47.     However, Dr. Barkey is quoted as saying "To my knowledge there were never any plans to 'bring in' a dermatologist." (Id.)

48.     The pain was so severe for some women that their mental health began to deteriorate, and they contemplated suicide to escape the daily onslaught of persistent, painful itching.

49.    By December 2018, on information and belief, nearly two-hundred women, almost 10% of the total prison population, suffered from the same unbearable rash and red bumps that were plaguing women since November 2016.

50.    Instead of helping the incarcerated women, in November or December of 2018, Defendants blamed the inmates as the cause of their own suffering— saying that the rash was a result of the women improperly misusing prison-issued cleaning fluids and using "homemade" laundry detergent to hand-wash their clothing, rather than sending them to the prison laundry.

51.    While Defendants tried testing for parasites in early 2018, they had failed to properly diagnose the incarcerated women because, on information and belief, there was not a single health official at the prison who had received training in diagnosing scabies.

52.    Notably, however, even a simple internet search of "red bumps on body and terrible itch" would render results for scabies, yet Defendants failed to detect it as a real possibility.

53.    Defendants had approximately two years before Dr. Barkey's arrival to bring in a competent dermatologist to examine the skin rash that the incarcerated women were suffering from, but ultimately refused and/or failed to do so.

54.    It was not until early January 2019 when Defendants acknowledged they were aware of the scabies diagnosis and could treat it. Spokesman Chis Gautz

is quoted as saying: "We've very pleased that we have been able to make this diagnosis. We know how to treat [scabies]." (See Detroit Free Press article, dated Jan. 5, 2019 titled "Scabies found on 24 women at state prison.")

55.    According to published reporting, after Dr. Markey's visit, Defendants are attempting to treat all 2070 women inmates for scabies. (See Detroit Free Press article, dated Jan. 18, 2019 titled "How Flint MD solved rash mystery that stumped women's prison officials.")

**Deliberate Indifference**

56.    Even after acknowledging that a pervasive health issue existed, Defendants utterly failed to provide adequate treatment and disregarded the risks associated with the above-described health issues.

57.    Defendants' failures amount to deliberate indifference towards Plaintiffs' Constitutional rights as well as deliberate indifference to the human feelings and physical safety of Plaintiffs and the class they seek to represent.

58.    On information and belief, Defendants failed to train medical staff to address' the inmates' obvious needs to access adequate medical care and medication or recognize outbreaks of contagious conditions such as scabies.

59.    Despite continuous complaints over approximately two years, Defendants maintained a policy, custom and practice of utterly failing to remedy

their gross failures and ignoring, denying, and then deflecting responsibility for the conditions at HVCF causing deprivation of Plaintiffs' constitutional rights.

60.     On information and belief, the conditions described above persist, thereby necessitating this Court's intervention to enjoin Defendants from continuing to violate Plaintiffs' constitutional rights and to hold Defendants accountable to current and formerly incarcerated women who were forced to suffer unbearable pain and horrendous, inhumane, and deplorable conditions within the walls of HVCF.

### **Plaintiff Pearson**

61.     Plaintiff Pearson was an inmate in HCVF from approximately the end of December 2016 until June 2017.

62.     Shortly after her arrival, Plaintiff Pearson began experiencing significant itching related to rashes in her feet and thighs.

63.     The rashes were visible and a source of major emotional distress and physical injury.

64.     The rashes had the hallmarks of scabies: pimple-like rashes, scales and blisters and sores.

65.     Plaintiff Pearson developed scarring on her thighs and feet.

66.     Plaintiff Pearson believes she reported problems associated with her rashes to the health care unit of HVCF on more than ten occasions.

14

67.     Plaintiff Pearson was provided unhelpful creams to try to treat the rash. But beyond this ineffective treatment, Plaintiff Pearson's complaints were otherwise ignored by Defendants.

68.     Despite repeated complaints, Plaintiff Pearson was not seen by a dermatologist.

69.     Plaintiff Pearson has suffered physical injuries and emotional distress related to the untreated rashes.

70.     Before bringing this action, Plaintiff Pearson grieved these issues pursuant to Defendant MDOC's and HVCF's form grievance policy, thereby exhausting her administrative remedies.

**Plaintiff Sheldon**

71.     During the relevant time period, Plaintiff Sheldon was an inmate at HCVF.

72.     On or about July 2018, Plaintiff Sheldon began experiencing significant itching related to rashes

73.     The rashes were visible and a source of major emotional distress and physical injury.

74.     The rashes had the hallmarks of scabies: pimple-like rashes, scales and blisters and sores.

75. Plaintiff Sheldon reported problems associated with her rashes to the health care unit of HVCF on several occasions.

76. Since she issued her first notice to Defendants of her rash problems in August 2018, Plaintiff Sheldon has been misdiagnosed and mistreated.

77. Plaintiff Sheldon was subject to skin scrapings and biopsies by personnel at HCVF, who later informed her that she was negative for scabies.

78. However, on information and belief, Plaintiff Sheldon's symptoms since August 2018 were consistent with scabies.

79. It was only after she was seen by an outside dermatologist on or about December 27, 2018, was there a diagnosis of scabies.

80. Plaintiff Pearson has suffered physical injuries and emotional distress related to the untreated rashes.

81. Before bringing this action, Plaintiff Pearson grieved these issues pursuant to Defendant MDOC's and HVCF's form grievance policy, thereby exhausting her administrative remedies.

## CLASS ACTION ALLEGATIONS

82. Plaintiffs bring this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure 23.

83. Plaintiffs assert their claims on behalf of the former inmate class defined as follows:

## Current and Former Inmate Class

All current and former detainees and inmates of the Gladwin Unit in HVCF who, while incarcerated at HVCF, had a skin rash consistent with a scabies infestation and who were denied treatment, or whose delayed treatment caused the condition to worsen, since November 2016.

84.    Plaintiffs assert their claims on behalf of the injunctive relief class

defined as follows:

## Injunctive Relief Class

All detainees and inmates of HVCF who were incarcerated and who, while at HVCF, were housed in the Gladwin Unit, since November 2016.

85.    The proposed Classes exclude Defendants' officers, directors, and

employees, as well as any judicial officer who presides over this action and

members of the judicial officer's immediate family.

86.    **Fed. R. Civ. P. 23(a)(1)—Numerosity / Impracticality of Joinder**:

The proposed Classes are so numerous that joinder of all class members is

impracticable. On information and belief, there are hundreds of class members in

each proposed Class, all of whom are or were subject to the conditions set forth

herein and therefore face a significant risk of serious illness and injury.

87.    Class members are identifiable using records maintained in the

ordinary course of business by HVCF.

88.    **Fed. R. Civ. P. 23(a)(2)—Commonality**: Common questions of law and fact exist as to all proposed class members. Among the common questions are, including but not limited to:

a. Whether the unhygienic and dangerous conditions at HVCF, and Defendants' refusal to provide adequate medical and mental health care, subject class members to an ongoing, substantial, and imminent risk of physical and psychological harm, illness, and death;

b. Whether the conditions at HVCF violate the Eighth Amendment's prohibition of cruel and unusual punishment;

c. Whether Defendants' refusal to provide adequate medical and mental health care to class members constitutes deliberate indifference to serious medical needs in violation of the Eighth Amendment;

d. Whether the unhygienic and dangerous conditions at HVCF, and Defendants' refusal to provide adequate medical and mental health care, result in constitutionally cognizable harm or present a constitutionally unacceptable risk of harm;

e. Whether Defendants unreasonably instituted or condoned the dangerous and unhygienic conditions at HVCF and refused to provide adequate medical and mental health care;

f.  Whether Defendants have been deliberately indifferent to the actual and serious risk of mental and physical suffering of class members;

g.  Whether Defendants maintain a policy, custom, and/or widespread practice of violating class members' constitutional rights through exposure to the dangerous conditions in the Gladwin Unit, the lack of adequate medical or mental health care, and the failure to train medical staff to address the Classes' obvious needs to access adequate medical care;

h.  The nature, scope, and operation of Defendants' practices, policies and customs as applied to prisoners incarcerated at HVCF; and

i.  Whether Defendants failure to hire, train, and/or supervise competent HVCF staff and agents resulted in violations of class members' constitutional rights.

89.  **Fed. R. Civ. P. 23(a)(3)—Typicality**: The claims of the Plaintiffs are typical of other members of the Classes, as their claims from the same policies, practices, and courses of conduct, and their claims are based on the same theory of law as the class claims.

90.  Further, Defendants are expected to raise common defenses to these claims, so that final relief is appropriate for the entire class.

91.    **Fed. R. Civ. P. 23(a)(4)—Adequacy of Representation**: Plaintiffs will fairly and adequately represent the interests of the Classes and will serve diligently as class representatives. Their interests are aligned with those of the purported class and they have retained counsel experienced in civil rights litigation, litigation involving rights of prisoners, and class action litigation.

92.    This action is maintainable as a class action because Defendants have acted or refused to act on grounds that generally apply to the Classes, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Classes as a whole.

93.    **Fed. R. Civ. P. 23(b)**—The Current and Former Inmate Class should be certified under Federal Rule of Civil Procedure 23(b)(3) because questions of law and fact common to the Class predominate over any questions affecting only individual members of the Class, and because a class action is superior to other available methods for the fair and efficient adjudication of this controversy. The illegal conduct is standardized; the class members do not have an interest in individually controlling the prosecution of the case; and there are no cases that have been brought by class members.

94.    Proceeding as a class action would permit the large number of injured parties to prosecute their common claims in a single forum simultaneously, efficiently, and without unnecessary duplication of evidence, effort, and judicial

resources. A class action is the only practical way to avoid the potentially inconsistent results that numerous individual trials are likely to generate. Numerous repetitive individual actions would also place an enormous burden on the courts, as they would be forced to take duplicative evidence and repeatedly decide the same issues concerning Defendants' conduct.

95.    The Classes should also be certified under Federal Rule of Civil Procedure 23(b)(1) and/or (b)(2) because:

    a.  The prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudication with respect to individual class members that would establish incompatible standards of conduct for Defendants;

    b.  The prosecution of separate actions by individual class members would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and/or

    c.  Defendant has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final and injunctive relief with respect to the class members as a whole.

96.     Alternatively, this case can be maintained as a class action with respect to particular issues under Federal Rule of Civil Procedure 23(c)(4).

## CAUSES OF ACTION

## COUNT I: VIOLATIONS OF THE EIGHTH AND FOURTEENTH AMENDMENTS TO THE U.S CONSTITUION
*(Against All Defendants)*

97.     Plaintiffs, by reference, incorporate the preceding paragraphs as though fully set forth herein.

98.     Dozens of complaints and requests for medical attention were filed by Plaintiffs and members of the Class and submitted to prison officials, all of which were ignored. The officials knew there was a substantial risk of serious harm to the Class but failed to act.

99.     Despite the numerous pleas for medical assistance regarding severe skin issues and injuries, Defendants did not provide basic medical care or assistance to assist Plaintiffs or the Class Members.

100.    Despite the numerous pleas for medical assistance regarding severe skin issues and injuries, Defendants failed to train medical staff to address Plaintiffs' and Class Members' need to access adequate medical care and medication or to recognize outbreaks of contagious conditions, including scabies.

101.    Prison officials, including the Director and Warden, the prison guards, and nursing staff, all had actual and/or constructive knowledge of a widespread

22

scabies infestation spreading through the Gladwin Unit at HVCF. These individuals had knowledge of Plaintiffs' asserted serious needs or were aware of the circumstances clearly indicating the existence of such needs, or subjectively perceived a risk of harm, but disregarded them by failing to take reasonable measures to abate them.

102.   The conduct of Defendants, as alleged in the preceding paragraphs, violates the rights guaranteed to Plaintiffs and the Classes they represent under the Eighth Amendment to the United States Constitution and laws in violation of 42 U.S.C. §1983, subjecting them to a substantial risk of serious harm, and causing the injuries alleged in this Complaint.

103.   Such actions and decisions on the part of Defendants, individually, separately, and/or jointly, were done in a knowing, willful, reckless manner and in bad faith.

104.   By virtue of the special relationship of the state-imposed custodial setting, Defendants were under an affirmative obligation to spend its resources to protect Plaintiffs and Class Members from harm.

105.   Defendants had exclusive control over the movement and placement of inmates in its custody. Defendants knowingly and intentionally transferred infested inmates into the crowded cells of healthy inmates, placing them in close

proximity to a dangerous contagion. Plaintiffs and the Class Members had no ability to transfer away from infested inmates.

106. Defendants' policies, practices, and customs violate Plaintiffs' basic human rights and dignity, and their right to be free from unconstitutional unhygienic and dangerous conditions and cruel and unusual punishment under the Eighth Amendment to the United States Constitution.

107. These policies, practices, and customs have been and continue to be implemented by the Defendants and their agents and employees, under color of law, in their official and individual capacities, and are the proximate cause of the ongoing violations of the constitutional rights of Plaintiffs and the Classes.

108. Defendants have been and are aware of the unconstitutional and dangerous conditions of the HCVF and have unreasonably instituted and/or condoned such conditions and/or been deliberately indifferent to the inhumane conditions and rampant violations of law and the substantial risk of serious harm and actual harm to Plaintiffs and the Classes.

109. Defendants have failed to prevent, caused, and continue to cause Plaintiffs and the Classes tremendous mental anguish, suffering, and pain, as well as the serious and lasting injury they are currently experiencing or are at risk of experiencing. Defendants' conduct is the direct and proximate cause of the constitutional violations and injuries to Plaintiff and the Classes as set forth above.

110.   Defendants' failure and refusal to treat the scabies infestation allowed it to spread to new hosts and caused the infestation to intensify and spread. Defendants therefore were the primary cause of the dangers to which Plaintiffs were exposed and increased the vulnerability of Plaintiffs to these dangers.

111.   As a result of the Defendants' actions and/or omissions, Plaintiffs and the Classes were deprived of their fundamental rights guaranteed by the United States Constitution, including the right to adequate medical care for their serious medical needs while in the custody of the state.

112.   As a result of Defendants' unlawful conduct, Plaintiffs and the Class Members are entitled to all damages and relief available at law and equity.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiffs pray on behalf of themselves and the members of the Class for entry of judgment finding and awarding as follows:

A. Certifying the Classes under Rule 23;

B. For an Order adjudging the practices and conduct of Defendants complained of herein to be in violation of the rights guaranteed to Plaintiff under the U.S. Constitution and Federal law;

C. For an Order adjudging that Defendants were deliberately indifferent to the serious medical needs of the Plaintiffs and Class Members;

D. For an Order adjudging that Defendants failed to protect Plaintiffs and the Classes from a state-created danger;

E. For an Order adjudging that Defendants were deliberately indifferent to Plaintiffs and the Classes by failing to train medical staff to address Plaintiffs' and the Class Members' obvious need to access adequate medical care and medication;

F. For an award to Plaintiffs against Defendants, jointly and severally, all relief available under 42 U.S.C. § 1983, to be determined at trial, with interest on such amounts;

G. For an award to the Class Members against Defendants, jointly and severally, all relief available under 42 U.S.C. § 1983, to be determined at trial, with interest on such amounts;

H. For an award of injunctive relief to the Class Members against Defendants;

I. For an award to Plaintiffs and the Class Members of actual damages, including those arising from loss of past and future income and benefits, humiliation, mental anguish, loss of reputation, emotional distress and other harm, in an amount in excess of $75,000 against Defendants Washington and Brewer in their individual capacity and Corizon;

26

J.   For an award of punitive damages in an amount to be determined at trial;

K.   For an award to Plaintiffs of their attorneys' fees, disbursements, and costs in this action, pursuant to 42 U.S.C. § 1988, and as otherwise available at law or in equity;

L.   For an award of prejudgment interest;

M.   For such other and further relief as the Court deems just and equitable.


Dated: March 8, 2019                    Respectfully submitted,

                                        */s/ Jonathan R. Marko*
                                        Jonathan R. Marko (P72450)
                                        **Ernst & Marko Law, PLC**
                                        Attorney for Plaintiffs
                                        645 Griswold Street, Suite 4100
                                        Detroit, Michigan 48226
                                        (313) 965-5555
                                        jon@ernstmarkolaw.com

                                        Matthew H. Morgan (MN 304657)
                                        Robert L. Schug (MN 0387013)
                                        **Nichols Kaster, PLLP**
                                        Attorneys for Plaintiffs
                                        80 South Eighth Street, Ste. 4600
                                        Minneapolis, MN 55402
                                        P: (612) 256-3200
                                        F: (612) 338-4878
                                        morgan@nka.com
                                        schug@nka.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 8, 2019, I served the foregoing paper to this Court's E-filing System which will send notification of such filing to the above listed attorneys of record.

*/s/ Marissa A. Williams*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

MACHELLE PEARSON, and
MARIA SHELDON, on behalf
of themselves and others similarly
situated,

      Plaintiffs,

                                     Case No.
v.                                     Hon.

MICHIGAN DEPARTMENT OF
CORRECTIONS, HEIDI
WASHINGTON, in her individual
capacity, SHAWN BREWER, in his individual
capacity, and CORIZON HEALTH,
INC., a Delaware Corporation,

      Defendants.

_____/

JONATHAN R. MARKO (P72450)
**Ernst & Marko Law, PLC**
Attorney for Plaintiffs
645 Griswold Street, Ste. 4100
Detroit, MI 48226
P: (313) 965-5555
F: (313) 965-5556
jon@ernstmarkolaw.com

MATTHEW H. MORGAN (MN 304657)
ROBERT L. SCHUG (MN 0387013)
**Nichols Kaster, PLLP**
Attorneys for Plaintiffs
80 South Eighth Street, Ste. 4600
Minneapolis, MN 55402
P: (612) 256-3200
F: (612) 338-4878

morgan@nka.com
schug@nka.com
_____

## **JURY DEMAND**

      Plaintiffs and the classes they represent hereby demand a trial by jury in the

above-captioned matter.


Dated: March 8, 2019             Respectfully submitted,

                                */s/ Jonathan R. Marko*
                                Jonathan R. Marko (P72450)
                                **Ernst & Marko Law, PLC**
                                Attorney for Plaintiffs
                                645 Griswold Street, Suite 4100
                                Detroit, Michigan 48226
                                (313) 965-5555
                                jon@ernstmarkolaw.com

                                Matthew H. Morgan (MN 304657)
                                Robert L. Schug (MN 0387013)
                                **Nichols Kaster, PLLP**
                                Attorneys for Plaintiffs
                                80 South Eighth Street, Ste. 4600
                                Minneapolis, MN 55402
                                P: (612) 256-3200
                                F: (612) 338-4878
                                morgan@nka.com
                                schug@nka.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 8, 2019, I served the foregoing paper to this Court's E-filing System which will send notification of such filing to the above listed attorneys of record.

*<u>/s/ Marissa A. Williams</u>*