## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

MACHELLE PEARSON, and
MARIA SHELDON, on behalf of
themselves and others similarly situated,

      Plaintiffs,

v.

      Case No. 2:19-cv-10707 VAR-EAS
      District Judge Victoria A. Roberts
      Mag. Judge Elizabeth A. Stafford

MICHIGAN DEPARTMENT OF
CORRECTIONS, HEIDI
WASHINGTON, in her individual capacity,
SHAWN BREWER, in his individual
capacity, and CORIZON HEALTH, INC.,
a Delaware Corporation,

      Defendants.

_____/

| | |
|---|---|
| JONATHAN R. MARKO (P72450) | MATTHEW H. MORGAN (MN304657) |
| **Ernst & Marko Law, PLC** | REBEKAH L. BAILEY (MN0389599) |
| Attorney for Plaintiffs | ROBERT L. SCHUG (MN0387013) |
| 645 Griswold Street, Ste. 4100 | **Nichols Kaster, PLLP** |
| Detroit, MI 48226 | 80 South Eighth Street, Ste. 4600 |
| P: (313) 965-5555 | Minneapolis, MN 55402 |
| F: (313) 965-5556 | P: (612) 256-3200 |
| jon@ernstmarkolaw.com | F: (612) 338-4878 |
| | morgan@nka.com |
| | bailey@nka.com |
| | schug@nka.com |

_____

## FIRST AMENDED COMPLAINT AND JURY DEMAND

_____/

645 GRISWOLD ST
SUITE 4100
DETROIT, MI 48226

ERNSTMARKOLAW.COM
(313) 965-5555

ERNST & MARKO LAW



Plaintiffs Machelle Pearson and Maria Sheldon, on behalf of themselves and members of the proposed Classes below, and by and through counsel Ernst & Marko Law, PLC and Nichols Kaster, PLLP, state as follows for their Complaint against the above-named Defendants:

## INTRODUCTION

Huron Valley Correctional Facility for Women ("HVCF") is operating under a state of degradation, filth, and inhumanity, endangering the health and safety of the incarcerated women and staff alike on a daily basis. HVCF is underfunded, understaffed, poorly administered, and intentionally overcrowded, giving rise to a chaotic and perilous environment inside the prison walls. Incarcerated women are regularly denied access to adequate medical and mental health care, hygienic conditions, and movement. As a result, the women incarcerated in HVCF were exposed to *Sarcoptes scabiei* ("scabies"), caused by the spread of parasitic mites. The scabies took a huge toll on these women, both physically and mentally, because it caused horrendous, unbearable itching pain. The women complained for years Defendants, however, failed to provide adequate training, screening programs, and resources to properly examine and treat the women's obvious symptoms of infestation.  Even when it did attempt to treat the women for scabies it did so in a haphazard way and without following the proper protocols for quarantine and disinfection, ensuring that the infestation would remain to spread among the

population. In fact, one brave dermatologist had to fight his way into the prison before the hundreds of women locked in HVCF finally had access to the critical, life-saving treatment they so desperately needed.

As discussed below, conditions at HVCF have deteriorated to such a degree as to expose Plaintiffs and the putative Class Members to an unreasonable risk of serious harm to their health and safety, in violation of the rights guaranteed to them under the United States Constitution. Defendants have long been on notice of the horrific conditions and constitutional deprivations occurring daily at HVCF yet have failed to timely or effectively remedy the deplorable state of affairs.

This is a civil rights class action, brought under 42 U.S.C. § 1983, challenging the inhumane, dangerous, and unconstitutional conditions endured by the women locked inside HVCF. Plaintiffs Pearson and Sheldon, on behalf of themselves and members of the proposed Classes, seek monetary damages, and injunctive and declaratory relief.

## JURISDICTION AND VENUE

1.      Jurisdiction of this Court is invoked pursuant to 42 U.S.C. § 1983, and jurisdiction is therefore proper pursuant to 28 U.S.C. §§ 1331 and 1343.

2.      Venue is proper in this District under 28 U.S.C. § 1391. The parties reside, or at the time the events took place, resided in this judicial district, and the

events giving rise to Plaintiffs' claims also occurred in this judicial district. Defendants are subject to this Court's personal jurisdiction.

3.      Defendant Corizon Health, Inc. ("Corizon") is a corporation incorporated in Delaware that does a substantial amount of its systematic and continuous business in Michigan as "Corizon of Michigan", and has been registered to do business in Michigan since 2000.

4.      Corizon is the Michigan Department of Corrections' private health care contractor and provides health services to Michigan prisons, including HVCF. At all material times, Corizon held a multi-million-dollar prison health contract with the State of Michigan to provide such services.

## **PARTIES**

5.      Plaintiff Machelle Pearson is a woman residing in Dearborn Heights, Michigan. Pearson was formerly incarcerated at HVCF and was paroled in August 2018. Pearson brings this Complaint on behalf of herself and the proposed Classes, as described herein.

6.      Plaintiff Maria Sheldon is a woman currently incarcerated.  Sheldon was housed at HVCF until approximately February 21, 2019.  Sheldon brings this Complaint on behalf of herself and the proposed Classes, as described herein.

7.      Defendant Michigan Department of Corrections ("MDOC") is a Michigan governmental agency that operates HVCF.  HVCF is a prison for women

4

located in Washtenaw County, Michigan. It is the only prison in Michigan that houses women.

8.     Defendant Heidi Washington, at all relevant times, was the director of the Michigan Department of Corrections.

9.     Defendant Shawn Brewer, at all relevant times, was the warden of HVCF.

10.     Defendant Corizon describes itself as "the correctional healthcare pioneer and leader for 40 years." Corizon conducts a substantial part of its systematic and continuous business in the Eastern District of Michigan. At all relevant times, Corizon provided health care services for MDOC at HVCF.

## FACTUAL ALLEGATIONS

11.     Plaintiffs and the Classes, by reference, incorporate the preceding paragraphs as though fully set forth herein.

12.     Plaintiffs Pearson and Sheldon were inmates of HVCF and bring this action on behalf of similarly situated former, current, and future inmates of HVCF.

13.     HVCF houses pretrial detainees as well as convicted women. The facility houses substantially more than 2,000 women at any given time.

14.     HVCF is currently the only women's prison in the state of Michigan.

15.    At all material times, the actions and/or omissions alleged herein occurred under color of state law, and the individual employees of the Defendants were acting within the scope and course of their employment.

16.    At all material times, Defendant MDOC employed Defendant Washington, Director of MDOC, and Defendant Stewart, Warden of HVCF, both of whom initiated and carried out the policies, practices, and customs of MDOC, and are also liable for their own actions and/or omissions.

17.    The conditions of HVCF are filthy and dangerous. For example, at all material times, black mold was found in the Gladwin Unit.

18.    The mold in the Gladwin Unit was so notoriously bad that it had eaten away an entire corner of the tile ceiling in the shower area.

19.    Further, because the shower area in the Gladwin Unit lacks proper ventilation, condensation drips on the women and their clothes while they shower and would not properly dry.

20.    Additionally, while Defendants MDOC, Washington, and Stewart used to allow the incarcerated women to clean with bleach, they changed that practice and began providing significantly diluted cleaning agents that do not adequately clean the aggressive mold or other filth.

21.    Defendants MDOC, Washington and Stewart were aware of the conditions and did nothing to remedy the dangerous condition.

**Scabies**

22.     Scabies is an infestation. Tiny mites, known as *Sarcoptes scabiei*, live in the outer layers of human skin. As the mites burrow and lay eggs, the infestation leads to relentless itching and rashes. (See https://www.webmd.com/skin-problems-and-treatments/ss/slideshow-scabies-overview).

23.     The itching and scratching associated with scabies also may lead to secondary bacterial infections or secondary infestations of microorganisms, including *Staphylococcus aureus* and *Streptococcus pyogenes*. (See https://www.michigan.gov/documents/scabies_manual_130866_7.pdf).

24.     Scabies is contagious and typically spreads through skin-to-skin contact, but that is not the only means of transmission. (See https://www.aad.org/public/diseases/contagious-skin-diseases/scabies#overview). Shared personal items such as bedding, clothes, furniture or towels may also cause the spread. (Id.)

25.     It is well-known that prison inmates can be at a higher risk for acquiring scabies. (See https://www.webmd.com/skin-problems-and-treatments/ss/slideshow-scabies-overview).

26.     Scabies infestations lead to relentless and unbearable itching, especially at night. The rash results can appear as small red bumps, welts or scaly lesions that can transform into scales, blisters, bleeding, and open sores caused by scratching.

(See https://www.verywellhealth.com/scabies-overview-1069441). The scabies rash typically occurs on the wrists, in between fingers, in armpits, around the waist and in the genital area. (Id.)

27.     Due to the severity of the itching at night, those infested with scabies can demonstrate an inability to sleep. (see https://www.aad.org/public/diseases/contagious-skin-diseases/scabies#symptoms). The inability to sleep and perpetual discomfort can result in mental illness and/or severe emotional distress. The infestation can result in permanent, visible scarring.

28.     Doctors should be able to identify scabies based on the appearance of the rash and the description of the itch. Other standard tests can also be used to diagnose such condition. (See https://www.webmd.com/skin-problems-and-treatments/ss/slideshow-scabies-overview).

29.     Defendants' systemic failure to provide livable conditions at HVCF and provide the basic medical care and treatment to inmates resulted in an outbreak of scabies, which spread throughout HVCF.

30.     Further, Defendants did not provide a medical screening for scabies prior to placing inmates in the general population at the facility.

**History of the rash**

31.     In or around November 2016, detainees and inmates at HVCF began complaining to Defendants about horrible itching and rashes they were developing.

8

32.     The rashes appeared to begin in the Gladwin unit and spread to at least eight of HVCF's fifteen units by March of 2018.  (Paul Egan, "Prison Will Close to Visitors While All 2,000 Women treated for Scabies," <u>Detroit Free Press</u> (Jan. 14, 2019).)

33.     The rashes women developed caused red bumps to appear on the inner thighs, buttocks, arms, backs, and chests of those afflicted, and caused unbearable pain from itching.

34.     Women complained about the symptoms, but their requests for treatment largely were ignored.

35.     After complaining, one woman was told that she was making herself itch.

36.     Some women never received treatment by a medical professional for their symptoms and/or were never tested for scabies and eventually were released from HVCF untreated.

37.     Further, some women began complaining about other, unrelated medical ailments as an excuse to get medical personnel's attention so that they could then bring up their problems with the rashes.

38.     The rash and itching is so unbearably painful that many of the women will suffer scarring because of the rash itself, as well scratching to find relief from the horrendous itching.

9

39.    For example, Plaintiff Pearson's rash was so bad that she has scars around her ankles and feet.

40.    Further some women will develop additional bacterial infections from improper treatment of the wounds caused by the scratching.

41.    Despite repeated complaints to Defendants about the rashes, according to published newspaper articles, in February 2018, Defendants "ruled out" scabies as the main source of the rash outbreak.  (<u>See</u> Paul Egan, "How Flint MD solved rash mystery that stumped women's prison officials," <u>Detroit Free Press</u> (Jan. 18, 2019).)

42.    In February and March of 2018, dermatologists evaluated and tested some affected patients, but their testing and medication recommendations were ineffective. (<u>Id.</u>)

43.    The Chief Medical Office of the Michigan Department of Corrections subsequently postulated that the samples were likely to be gathered by inaccurate scrapping methods.  (Egan, <u>supra</u> (Jan. 14, 2019).)

44.    Indeed, the Michigan Department of Community Health cautions that "[n]egative findings do not rule out the presence of scabies." (https://www.michigan.gov/documents/scabies_manual_130866_7.pdf.)

45.    Defendants administered prescription steroid cream, claiming that it had been effective for some of the afflicted women.

46.     Defendants did not provide creams to all women exhibiting symptoms. As a result, untreated women had to beg those lucky enough to receive the creams to share.

47.     When the steroid cream did not work, Defendants advised the women to try mixing the steroid cream and other ointments together to try to remedy the rash.

48.     Unsurprisingly, this haphazard mixture did not provide any relief to the afflicted women who's suffering only worsened as the year continued.

49.     The itching and discomfort was so bad that some women resorted to pouring bleach mixtures on their body in the shower.

50.     Although the women received unhelpful medication and medical advice, Defendants did not take adequate actions to properly quarantine infested individuals from the general population or disinfect their surroundings and personal items until 2019.

51.     It was not until the end of 2018—nearly ten months after its first testing—when Defendants again seriously considered the possibility of scabies. Around that time, some women were allegedly treated for scabies, and clothing and bed linens were allegedly replaced. (See Paul Egan, "At least 24 Cases of Scabies Found at Michigan's Only Women's Prison," Detroit Free Press (Jan. 4, 2019).)

52.     In fact, it wasn't until Dr. Walter Barkey, a dermatologist from Flint, visited HVCF in late December 2018 to meet with inmates, that a diagnosis of scabies was made.

53.     Dr. Barkey, who had read reports about the rash outbreak and received information firsthand from a friend whose daughter is an inmate at HVCF, reached out to Defendants to offer to examine and treat the afflicted prisoners. (See Egan, supra (Jan. 18, 2019).)

54.     Dr. Barkey had several telephone interviews with Defendants to see inmates at the facility before he was allowed access. (Id.)

55.     Dr. Barkey brought a microscope with him to the facility and was able to detect samples of the live mites from skin scrapings of some women and determine their rashes were scabies. (Id.)

56.     Defendants maintain that previous skin scraping samples they studied were negative for scabies. (Id.)

57.     However, Dr. Barkey is quoted as saying "To my knowledge there were never any plans to 'bring in' a dermatologist." (Id.)

58.     The pain was so severe for some women that their mental health began to deteriorate, and they contemplated suicide to escape the daily onslaught of persistent, painful itching.

59.     By December 2018, on information and belief, nearly two-hundred women, almost 10% of the total prison population, suffered from an unbearable rash and red bumps that had been plaguing women since November 2016.

60.     Instead of helping the incarcerated women, in November or December of 2018, Defendants blamed the inmates as the cause of their own suffering—saying that the rash was a result of the women improperly misusing prison-issued cleaning fluids and using "homemade" laundry detergent to hand-wash their clothing, rather than sending them to the prison laundry.

61.     While Defendants tried testing for parasites in early 2018, they had failed to properly diagnose the incarcerated women and effectively eradicate the infestation because, on information and belief, Defendants failed to train its health officials on or properly execute Michigan's Department of Community Health, Scabies and Prevention and Control Manual or other applicable scabies protocols..

62.     Defendants had approximately two years before Dr. Barkey's arrival to bring in a competent dermatologist to examine the skin rash that the incarcerated women were suffering from, or successfully test, appropriately treat, and/or properly eradicate the skin rash that plagued the prison.

63.     It was not until early January 2019 when Defendants acknowledged they were aware of the scabies diagnosis and could treat it. Spokesman Chis Gautz

is quoted as saying: "We're very pleased that we have been able to make this diagnosis. We know how to treat [scabies]." (See Egan, supra (Jan. 4, 2019).)

64.     According to published reporting, after Dr. Markey's visit, Defendants are only now attempting to treat all 2070 women inmates for scabies. (See Egan, supra (Jan. 18, 2019).)

**Deliberate Indifference**

65.     Even after acknowledging that a pervasive health issue existed, Defendants utterly failed to provide adequate treatment and disregarded the risks associated with the above-described health issues.

66.     Defendants' failures amount to deliberate indifference towards Plaintiffs' Constitutional rights as well as deliberate indifference to the human feelings and physical safety of Plaintiffs and the Classes they seek to represent.

67.     On information and belief, Defendants failed to train medical staff to address the inmates' obvious needs to access adequate medical care and medication, to adequately screen/test for scabies, and to recognize outbreaks of contagious conditions such as scabies.

68.     On information and belief, Defendants failed to implement and execute applicable scabies protocols, including the Michigan Department of Community Health's Scabies Prevention and Control Manual.

14

69.     Despite continuous complaints over approximately two years, Defendants maintained a policy, custom and practice of utterly failing to remedy their gross failures and ignoring, denying, and then deflecting responsibility for the conditions at HVCF causing deprivation of Plaintiffs' constitutional rights.

70.     On information and belief, the conditions described above persist, thereby necessitating this Court's intervention to enjoin Defendants from continuing to violate Plaintiffs' and the Class Member's constitutional rights and to hold Defendants accountable to current and formerly incarcerated women who were forced to suffer unbearable pain and horrendous, inhumane, and deplorable conditions within the walls of HVCF.

**Plaintiff Pearson**

71.     Plaintiff Pearson was an inmate in HCVF's Gladwin Unit from approximately the end of December 2016 until June 2017.

72.     Shortly after her arrival, Plaintiff Pearson began experiencing significant itching related to rashes in her feet and thighs.

73.     The rashes were visible and a source of major emotional distress and physical injury.

74.     The rashes had the hallmarks of scabies: pimple-like rashes, scales and blisters and sores.

75.     Plaintiff Pearson developed scarring on her thighs, feet, and back.

76.     Plaintiff Pearson believes she reported problems associated with her rashes to the health care unit of HVCF on more than ten occasions.

77.     Plaintiff Pearson was provided unhelpful creams and a pill intended to treat worm infestations to try to treat the rash.  She was also quarantined for three days. But beyond this ineffective treatment, Plaintiff Pearson's complaints were otherwise ignored by Defendants and she received nothing to help with the itching.

78.     Despite repeated complaints, Plaintiff Pearson was not seen by a dermatologist.

79.     Plaintiff Pearson has suffered physical injuries and emotional distress related to the untreated rashes.

80.     Pearson did not get proper help for her condition until her release. Pearson lost two toe nails as a result of the healing process.

81.     Before bringing this action, Plaintiff Pearson grieved these issues pursuant to Defendant MDOC's and HVCF's form grievance policy, thereby exhausting her administrative remedies.

**Plaintiff Sheldon**

82.     Plaintiff Sheldon became an inmate released in general population at HCVF in the Filmore Unit in approximately the beginning of July 2018.

83.     Around the time she arrived, guards circulated diagrams of women's bodies and asked them to circle where on their body they were itching or experiencing other systems.

84.     Plaintiff Sheldon began itching and experiencing discomfort almost immediately, particularly at night.

85.     The rashes had the hallmarks of scabies: pimple-like rashes, scales and blisters and sores.

86.     She found them on her buttocks, thighs, armpits, and behind her knees.

87.     The rashes were visible and a source of major emotional distress and physical injury.

88.     Plaintiff Sheldon reported problems associated with her rashes to the healthcare unit of HVCF on several occasions.

89.     Plaintiff Sheldon issued her first notice to Defendants of her rash problems in or around August 2018, providing a detailed outline of the issue.  She received no medical attention in response.  She was told she was suffering from mosquito bites.

90.     Plaintiff Sheldon begged nurses to see her, and after much persuading, she was permitted to see a doctor in approximately October or September.  The doctor indicated to Sheldon that her symptoms presented as scabies and that he was going to prescribed treatment accordingly.

91.    He further subjected Plaintiff Sheldon to skin scrapings and biopsies, who later informed her that she was negative for scabies.  Plaintiff Sheldon later found out that HVCF was scraping incorrectly, leading to the negative results.

92.    Plaintiff Sheldon never received the medication prescribed by the doctor.

93.    When Plaintiff Sheldon told Deputy Howard she had scabies, Howard disagreed and insisted that the issue was women's use of homemade detergents and inadequate toilet cleaning.  Plaintiff Sheldon informed Deputy Howard that she did not use homemade detergents.

94.    Plaintiff Sheldon continued to complain, and her suffering continued to be ignored.

95.    Plaintiff Sheldon herself consulted medical resources about her condition.  From her own research, she determined she likely had scabies.

96.    It was only after she was seen by an outside dermatologist on or about December 27, 2018, that she was officially diagnosed with scabies.

97.    After this, Plaintiff received multiple doses of medication, but she was never properly quarantined, and her environment was not effectively disinfected, making eradication difficult.

98.    For example, after quarantine in December of 2018, they re-placed her in open barracks in the Lenawee Unit without disinfecting her bedding or living area.

99.     During another quarantine, they took her clothes but let her keep on her dirty bra and underwear.   After quarantine, Defendant gave her back her dirty, unwashed clothes to wear.

100.     Plaintiff Sheldon was transferred days before receiving her final dosage.   She worried that she would place inmates at other facilities at risk.

101.     Plaintiff Sheldon has suffered physical injuries and emotional distress related to the untreated rashes.   She has permanent dark spots on her body as a result.

102.     Before bringing this action, Plaintiff Sheldon grieved these issues pursuant to Defendant MDOC's and HVCF's form grievance policy, thereby exhausting her administrative remedies.

## CLASS ACTION ALLEGATIONS

103.     Plaintiffs bring this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure 23.

104.     Plaintiffs assert their claims on behalf of the former inmate class defined as follows:

### Current and Former Inmate Class

All current and former detainees and inmates in HVCF who, while incarcerated at HVCF, had a skin rash consistent with a scabies infestation and who were denied treatment, or whose delayed treatment caused the condition to worsen, since November 2016.

105.     Plaintiffs assert their claims on behalf of the injunctive relief class defined as follows:

**Injunctive Relief Class**

All detainees and inmates of HVCF who were incarcerated and who, while at HVCF since November 2016.

106.   The proposed Classes exclude Defendants' officers, directors, and employees, as well as any judicial officer who presides over this action and members of the judicial officer's immediate family.

107.   **Fed. R. Civ. P. 23(a)(1)—Numerosity / Impracticality of Joinder**: The proposed Classes are so numerous that joinder of all Class Members is impracticable. On information and belief, there are hundreds of Class Members in each proposed Class, all of whom are or were subject to the conditions set forth herein and therefore face a significant risk of serious illness and injury.

108.   Class members are identifiable using records maintained in the ordinary course of business by HVCF.

109.   **Fed. R. Civ. P. 23(a)(2)—Commonality**: Common questions of law and fact exist as to all proposed Class Members. Among the common questions are, including but not limited to:

    a. Whether the unhygienic and dangerous conditions at HVCF, and Defendants' refusal to provide adequate medical and mental health care, subject Class Members to an ongoing, substantial, and imminent risk of physical and psychological harm, illness, and death;

b. Whether the conditions at HVCF violate the Eighth Amendment's prohibition of cruel and unusual punishment;

c. Whether Defendants' refusal to provide adequate medical and mental health care to Class Members constitutes deliberate indifference to serious medical needs in violation of the Eighth Amendment;

d. Whether the unhygienic and dangerous conditions at HVCF, and Defendants' refusal to provide adequate medical and mental health care, result in constitutionally cognizable harm or present a constitutionally unacceptable risk of harm;

e. Whether Defendants unreasonably instituted or condoned the dangerous and unhygienic conditions at HVCF and refused to provide adequate medical and mental health care;

f. Whether Defendants have been deliberately indifferent to the actual and serious risk of mental and physical suffering of Class Members;

g. Whether Defendants maintain a policy, custom, and/or widespread practice of violating Class Members' constitutional rights through exposure to the dangerous conditions at HVCF, the lack of adequate medical or mental health care, and the failure to train medical staff to address the Classes' obvious needs to access adequate medical care;

h. The nature, scope, and operation of Defendants' practices, policies and customs as applied to prisoners incarcerated at HVCF; and

i. Whether Defendants failure to hire, train, and/or supervise competent HVCF staff and agents resulted in violations of Class Members' constitutional rights.

110. **Fed. R. Civ. P. 23(a)(3)—Typicality**: The claims of the Plaintiffs are typical of other members of the Classes, as their claims from the same policies, practices, and courses of conduct, and their claims are based on the same theory of law as the class claims.

111. Further, Defendants are expected to raise common defenses to these claims, so that final relief is appropriate for both Classes.

112. **Fed. R. Civ. P. 23(a)(4)—Adequacy of Representation**: Plaintiffs will fairly and adequately represent the interests of the Classes and will serve diligently as class representatives. Their interests are aligned with those of the purported Classes and they have retained counsel experienced in civil rights litigation, litigation involving rights of prisoners, and class action litigation.

113. This action is maintainable as a class action because Defendants have acted or refused to act on grounds that generally apply to the Classes, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Classes as a whole.

114. **Fed. R. Civ. P. 23(b)**—The Current and Former Inmate Class should be certified under Federal Rule of Civil Procedure 23(b)(3) because questions of law and fact common to the Class predominate over any questions affecting only individual members of the Class, and because a class action is superior to other available methods for the fair and efficient adjudication of this controversy. The illegal conduct is standardized; the Class Members do not have an interest in individually controlling the prosecution of the case; and there are no cases that have been brought by Class Members.

115. Proceeding as a class action would permit the large number of injured parties to prosecute their common claims in a single forum simultaneously, efficiently, and without unnecessary duplication of evidence, effort, and judicial resources. A class action is the only practical way to avoid the potentially inconsistent results that numerous individual trials are likely to generate. Numerous repetitive individual actions would also place an enormous burden on the courts, as they would be forced to take duplicative evidence and repeatedly decide the same issues concerning Defendants' conduct.

116. The Classes should also be certified under Federal Rule of Civil Procedure 23(b)(1) and/or (b)(2) because:

> a. The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudication with respect

to individual Class Members that would establish incompatible standards of conduct for Defendants;

b.  The prosecution of separate actions by individual Class Members would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other Class Members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and/or

c.  Defendant has acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate final and injunctive relief with respect to the Class Members as a whole.

117.  Alternatively, this case can be maintained as a class action with respect to particular issues under Federal Rule of Civil Procedure 23(c)(4).

## CAUSES OF ACTION

## COUNT I: VIOLATIONS OF THE EIGHTH AND FOURTEENTH AMENDMENTS TO THE U.S CONSTITUION
### *(Against All Defendants)*

118.  Plaintiffs and the Class Members, by reference, incorporate the preceding paragraphs as though fully set forth herein.

119.  Dozens of complaints and requests for medical attention were filed by Plaintiffs and members of the Classes and submitted to prison officials, all of which were inadequately addressed and many of which were ignored. The officials knew

there was a substantial risk of serious harm to the Classes but failed to act appropriately.

120.    Despite the numerous pleas for medical assistance regarding severe skin issues and injuries, Defendants did not provide basic medical care or assistance to assist Plaintiffs or the Class Members.

121.    Despite the numerous pleas for medical assistance regarding severe skin issues and injuries, Defendants failed to appropriately train HVCF personnel to identify, test for, treat, and/or eradicate outbreaks of contagious conditions, including scabies.

122.    Even when Defendants did attempt to treat Plaintiffs or the Class Members for scabies, it did not follow appropriate protocol for the testing, treatment, and quarantine of Plaintiffs and the Class Members and the disinfecting of the facilities.

123.    Prison officials, including the Director and Warden, the prison guards, nursing staff, and doctors, all had actual and/or constructive knowledge of a widespread scabies infestation spreading through HVCF. These individuals had knowledge of Plaintiffs' and Class Members' asserted serious needs or were aware of the circumstances clearly indicating the existence of such needs, or subjectively perceived a risk of harm, but disregarded them by failing to take reasonable measures to abate them.

124.   The conduct of Defendants, as alleged in the preceding paragraphs, violates the rights guaranteed to Plaintiffs and the Classes they represent under the Eighth Amendment to the United States Constitution and laws in violation of 42 U.S.C. §1983, subjecting them to a substantial risk of serious harm, and causing the injuries alleged in this Complaint.

125.   Such actions and decisions on the part of Defendants, individually, separately, and/or jointly, were done in a knowing, willful, or in a reckless manner and in bad faith.

126.   By virtue of the special relationship of the state-imposed custodial setting, Defendants were under an affirmative obligation to spend their resources to protect Plaintiffs and Class Members from harm.

127.   Defendants had exclusive control over the movement and placement of inmates in their custody. Defendants knowingly and intentionally transferred infested inmates into the crowded cells of healthy inmates, placing them in close proximity to a dangerous contagion. Plaintiffs and the Class Members had no ability to transfer away from infested inmates.

128.   Defendants' policies, practices, and customs violate Plaintiffs' basic human rights and dignity, and their right to be free from unconstitutional unhygienic and dangerous conditions and cruel and unusual punishment under the Eighth Amendment to the United States Constitution.

26

129.   These policies, practices, and customs have been and continue to be implemented by the Defendants and their agents and employees, under color of law, in their official and individual capacities, and are the proximate cause of the ongoing violations of the constitutional rights of Plaintiffs and the Classes.

130.   Defendants have been and are aware of the unconstitutional and dangerous conditions of the HCVF and have unreasonably instituted and/or condoned such conditions and/or been deliberately indifferent to the inhumane conditions and rampant violations of law and the substantial risk of serious harm and actual harm to Plaintiffs and the Classes.

131.   Defendants have failed to prevent, caused, and continue to cause Plaintiffs and the Classes tremendous mental anguish, suffering, and pain, as well as the serious and lasting injury they are currently experiencing or are at risk of experiencing. Defendants' conduct is the direct and proximate cause of the constitutional violations and injuries to Plaintiffs and the Classes as set forth above.

132.   Defendants' failure and refusal to treat the scabies infestation allowed it to spread to new hosts and caused the infestation to intensify and spread. Defendants therefore were the primary cause of the dangers to which Plaintiffs were exposed and increased the vulnerability of Plaintiffs to these dangers.

133.   As a result of the Defendants' actions and/or omissions, Plaintiffs and the Classes were deprived of their fundamental rights guaranteed by the U.S.

Constitution, including the right to adequate medical care for their serious medical needs while in the custody of the state.

134.   As a result of Defendants' unlawful conduct, Plaintiffs and the Class Members are entitled to all damages and relief available at law and equity.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiffs pray on behalf of themselves and the members of the Classes for entry of judgment finding and awarding as follows:

A. Certifying the Classes under Rule 23;

B. For an Order adjudging the practices and conduct of Defendants complained of herein to be in violation of the rights guaranteed to Plaintiffs under the U.S. Constitution and Federal law;

C. For an Order adjudging that Defendants were deliberately indifferent to the serious medical needs of the Plaintiffs and Class Members;

D. For an Order adjudging that Defendants failed to protect Plaintiffs and the Classes from a state-created danger;

E. For an Order adjudging that Defendants were deliberately indifferent to Plaintiffs and the Classes by failing to train medical staff to address Plaintiffs' and the Class Members' obvious need to access adequate medical care and medication;

F.  For an award to Plaintiffs against Defendants, jointly and severally, all relief available under 42 U.S.C. § 1983, to be determined at trial, with interest on such amounts;

G.  For an award to the Class Members against Defendants, jointly and severally, all relief available under 42 U.S.C. § 1983, to be determined at trial, with interest on such amounts;

H.  For an award of injunctive relief to the Class Members against Defendants;

I.  For an award to Plaintiffs and the Class Members of actual damages, including those arising from loss of past and future income and benefits, humiliation, mental anguish, loss of reputation, emotional distress and other harm, in an amount in excess of $75,000 against Defendants Washington and Brewer in their individual capacity and Corizon;

J.  For an award of punitive damages in an amount to be determined at trial;

K.  For an award to Plaintiffs of their attorneys' fees, disbursements, and costs in this action, pursuant to 42 U.S.C. § 1988, and as otherwise available at law or in equity;

L.  For an award of prejudgment interest;

M. For such other and further relief as the Court deems just and equitable.

Dated: March 26, 2019                Respectfully submitted,

                                     /s/Rebekah L. Bailey
                                     Matthew H. Morgan (MN 304657)
                                     Rebekah L. Bailey (MN 0389599)
                                     Robert L. Schug (MN 0387013)
                                     **Nichols Kaster, PLLP**
                                     Attorneys for Plaintiffs
                                     80 South Eighth Street, Ste. 4600
                                     Minneapolis, MN 55402
                                     P: (612) 256-3200
                                     F: (612) 338-4878
                                     morgan@nka.com
                                     bailey@nka.com
                                     schug@nka.com

                                     Jonathan R. Marko (P72450)
                                     **Ernst & Marko Law, PLC**
                                     Attorney for Plaintiffs
                                     645 Griswold Street, Suite 4100
                                     Detroit, Michigan 48226
                                     (313) 965-5555
                                     jon@ernstmarkolaw.com

                                     **ON BEHALF OF THE PLAINTIFFS
                                     AND THE PUTATIVE CLASS**

## CERTIFICATE OF SERVICE

I hereby certify that on March 26, 2019, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system.  I hereby also certify that the foregoing document will be served to the Registered Agent of Defendants or Defendants listed in the above-captioned matter pursuant to Rule 4 of the Federal Rules of Civil Procedure and an Affidavit of Service will be filed with the Court upon completion of service.

Dated: March 26, 2019                     s/Rebekah L. Bailey
                                          Rebekah L. Bailey



**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

MACHELLE PEARSON, and
MARIA SHELDON, on behalf of
themselves and others similarly situated,

Plaintiffs,

v.

Case No. 2:19-cv-10707 VAR-EAS
District Judge Victoria A. Roberts
Mag. Judge Elizabeth A. Stafford

MICHIGAN DEPARTMENT OF CORRECTIONS, HEIDI WASHINGTON, in her individual capacity, SHAWN BREWER, in his individual capacity, and CORIZON HEALTH, INC., a Delaware Corporation,

Defendants.

_______________________________________/

JONATHAN R. MARKO (P72450)
**Ernst & Marko Law, PLC**
Attorney for Plaintiffs
645 Griswold Street, Ste. 4100
Detroit, MI 48226
P: (313) 965-5555
F: (313) 965-5556
jon@ernstmarkolaw.com

MATTHEW H. MORGAN (MN304657)
REBEKAH L. BAILEY (MN0389599)
ROBERT L. SCHUG (MN0387013)
**Nichols Kaster, PLLP**
80 South Eighth Street, Ste. 4600
Minneapolis, MN 55402
P: (612) 256-3200
F: (612) 338-4878
morgan@nka.com
bailey@nka.com
schug@nka.com

**JURY DEMAND**

_______________________________________/

645 GRISWOLD ST
SUITE 4100
DETROIT, MI 48226
ERNSTMARKOLAW.COM
(313) 965-5555
ERNST & MARKO LAW

Plaintiffs and the Classes they represent hereby demand a trial by jury in the above-captioned matter.

Dated: March 26, 2019   Respectfully submitted,

       /s/Rebekah L. Bailey
       Matthew H. Morgan (MN 304657)
       Rebekah L. Bailey (MN 0389599)
       Robert L. Schug (MN 0387013)
       **Nichols Kaster, PLLP**
       Attorneys for Plaintiffs
       80 South Eighth Street, Ste. 4600
       Minneapolis, MN 55402
       P: (612) 256-3200
       F: (612) 338-4878
       morgan@nka.com
       bailey@nka.com
       schug@nka.com

       Jonathan R. Marko (P72450)
       **Ernst & Marko Law, PLC**
       Attorney for Plaintiffs
       645 Griswold Street, Suite 4100
       Detroit, Michigan 48226
       (313) 965-5555
       jon@ernstmarkolaw.com

       **ON BEHALF OF THE PLAINTIFFS**
       **AND THE PUTATIVE CLASS**

## CERTIFICATE OF SERVICE

I hereby certify that on March 26, 2019, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system.  I hereby also certify that the foregoing document will be served to the Registered Agent of Defendants or Defendants listed in the above-captioned matter pursuant to Rule 4 of the Federal Rules of Civil Procedure and an Affidavit of Service will be filed with the Court upon completion of service.


Dated: March 26, 2019                    s/Rebekah L. Bailey
                                         Rebekah L. Bailey (MN 0389599)