UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MACHELLE PEARSON, MARIA
SHELDON, RACHELL GARWOOD,
REBECCA SMITH,
on behalf of themselves
and others similarly situated,

        Plaintiffs,

v.

MICHIGAN DEPARTMENT OF
CORRECTIONS, HEIDI WASHINGTON,
SHAWN BREWER, RUSSELL MARLAN,
KENNETH MCKEE, LLOYD RAPELJE,
LIA GULICK, DAVID JOHNSON, KARRI
OSTERHOUT, JOSEPH TREPPA, DAN
CARTER, RICHARD BULLARD and
TONI MOORE, JAMES BLESSMAN,
CARMEN MCINTYRE, WAYNE STATE
UNIVERSITY, CORIZON, in their official and
individual capacities,

        Defendants.
_____/

Case No. 19-10707
District Judge Victoria A. Roberts
Mag. Judge Elizabeth A. Stafford

## ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [ECF No. 89]

**I.   INTRODUCTION**

Machelle Pearson ("Pearson"), Maria Sheldon ("Sheldon"), Rachell Garwood ("Garwood"), and Rebecca Smith ("Smith," collectively "Plaintiffs")

1

challenge the inhumane, dangerous, and unconstitutional conditions endured at the Women's Huron Valley Correctional Facility ("WHV").

One set of Defendants is the Michigan Department of Corrections ("MDOC") and its employees ("MDOC Defendants").

Plaintiffs allege that incarcerated women at WHV are regularly denied access to adequate medical and mental health care, hygienic conditions, and movement within the facility. Such denials have caused Plaintiffs to be exposed to Sarcoptes scabiei ("scabies"). Plaintiff's say that they suffer symptoms and related health conditions as a result. They filed this civil rights action under 42 U.S.C. § 1983.

In their Motion for Summary Judgment, MDOC Defendants say Smith and Garwood failed to exhaust the grievance process, and that MDOC Defendants are entitled to summary judgment on the unexhausted claims. There is no dispute that Sheldon and Pearson exhausted administrative remedies.

The Court **DENIES** MDOC Defendants' Motion for Summary Judgment.

II. **BACKGROUND**

Plaintiffs are current or former prisoners who were incarcerated in the WHV. They say inmates have complained for years – to no avail – concerning the conditions at WHV that have led to scabies outbreaks.

Scabies is caused by tiny mites, known as *Sarcoptes scabiei*, that live in the outer layers of human skin. As mites burrow and lay eggs, the infestation leads to itching and rashes. The rash results can appear as small red bumps, welts or scaly lesions that can transform into scales, blisters, bleeding, and open sores caused by scratching.

Plaintiffs say that they suffer symptoms and health maladies related to the exposure and spread of the parasitic mites. They allege Defendants subjected them to an unreasonable risk of serious harm to their health and safety, in violation of rights guaranteed under the United States Constitution.

### III.  STANDARD OF REVIEW

Under Fed. R. Civ. P. 56(a), "[t]he Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The movant bears the initial burden to inform the Court of the basis for its motion; it must identify particular portions of the record that demonstrate the absence of a genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323

(1986). If the movant satisfies its burden, the non-moving party must set forth specific facts showing a genuine issue for trial. *Id.* at 324. Unsupported, conclusory statements are insufficient to establish a factual dispute to defeat summary judgment, as is the "mere existence of a scintilla of evidence in support of the [non-movant's] position"; the evidence must be such that a reasonable jury could find in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *Alexander v. CareSource*, 576 F.3d 551, 560 (6th Cir. 2009).

In deciding a summary judgment motion, the Court "views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). The Court need only consider the cited materials, but it may consider other evidence in the record. Fed. R. Civ. P. 56(c)(3). The Court's function at the summary judgment stage "is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 249.

**IV. ANALYSIS**

  **A. Exhaustion of Administrative Remedies**

    **1. Legal Principles**

4

Pursuant to the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), a prisoner bringing an action contesting prison conditions under 42 U.S.C. § 1997e(a) must first exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). Prisoners must do this, even if they may not be able to obtain the specific type of relief they seek in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999).

Proper exhaustion requires prisoners to complete the administrative review process within deadlines and abide by other applicable procedural rules. *See Jones v. Bock*, 549 U.S. 199 (2007); *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218.

MDOC Policy Directive 03.02.130 (effective March 18, 2019) sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. It requires inmates to first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond their control. If oral

5

resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution.

The Policy Directive gives directions for completing grievance forms: "The issues shall be stated briefly. Information provided shall be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent.

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, she may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, she may appeal to Step III.

The inmate must send the Step III form within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due.

Time limitations must be adhered to by the inmate and staff at all steps of the grievance process. "The total grievance process from the point of filing a Step I grievance to providing a Step III response shall be completed within 90 calendar days unless an extension has been approved...." MDOC Policy Directive 03.02.130

### 2. Purpose of Exhaustion Requirement

The Supreme Court defines proper exhaustion under 42 U.S.C. § 1997e(a) as "using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." *Woodford*, 548 U.S. at 90, quoting, *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford*, 548 U.S. at 89. The Supreme Court also observed that "[t]he PLRA attempts to eliminate unwarranted federal court interference with the administration of prisons, and thus seeks to 'afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.'" *Id.* at 93, quoting, *Porter*, 534 U.S. at 525.

Exhaustion serves a dual purpose: it gives prisoners "an effective incentive to make full use of the prison grievance process and accordingly provides prisons with a fair opportunity to correct their own errors." *Id.* at 94. Additionally, the exhaustion requirement "has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record." *Jones*, 549 U.S. at 204-205.

### 3. Garwood's Grievance

Defendants contend Garwood failed to exhaust administrative procedures. One grievance is relevant to this suit: WHV-19- 03-1150-12E. The Court believes questions of fact exist regarding exhaustion, making summary judgment inappropriate.

Between January and March 2019, Garwood submitted at least six kite requests for medical treatment. Garwood filed a Step I grievance on March 7, 2019 after her sixth kite was unresolved and a rash on her arm continued to cause her pain.

MDOC responded on April 22, 2019 by saying the Step I grievance was "resolved" since Garwood was seen by medical personnel on January 10, 2019. Garwood says health care officials cancelled her January 2019 appointment and never rescheduled. She did not receive the Step I response

8

until May 15, 2019 — more than two months after she submitted the grievance. Garwood appealed the Step I response on May 21, 2019.

MDOC denied her Step II grievance on June 5, 2019 for the same reason. Garwood's response – again – was she never received treatment because her appointment was canceled.

Garwood appealed the Step II response; MDOC denied it on July 30, 2019. MDOC said that Garwood's "disagreement with the treatment plan does not constitute a denial of care." MDOC, again, contended the grievance was resolved because health care professionals saw Garwood on either January 10, 2019 or January 14, 2019. However, Garwood attests she never had a health care appointment.

MDOC argues that Garwood failed to timely file her grievance because she did not fully complete the grievance process before this complaint was filed on March 8, 2019. But Garwood counters that she was not named in the initial complaint and did not become a named plaintiff until the Master Consolidated Complaint was filed on February 20, 2020. Garwood says she fully exhausted by July 30, 2019. The Court is persuaded by Garwood's argument that since this case concerns multiple Plaintiffs – many of who had filed grievances and exhausted prior to the complaint being filed – and because Plaintiff did not join this suit until after fully exhausting, that she

9

properly exhausted. *See Doe v. Anderson*, No. 15-13852, 2017 WL 4682291, at *3 (E.D. Mich. Oct. 18, 2017).

Next, the Court considers whether Garwood's grievance was specific enough to alert MDOC officials of the underlying scabies issue at WHV. Garwood's grievance notes, "I have submitted documented, detailed, medical kites on the above listed dates requesting medical treatment for a rash that I have been suffering from for months." [ECF No. 89-5, PageID.825]. She states "health services" had rejected six other kites and noted that she has still not been seen by a health care worker.

The MDOC Defendants contend that Garwood's grievance is insufficient because it cites only to "health services" and not to individuals. They say this is insufficient to put Defendants on specific notice. But, careful examination of Garwood's grievance reveals that she did not just cite "health services" without other detail. Rather, she stated health services had rejected 6 earlier kites; she then proceeded to list the dates of the kites. [ECF No.89-5, PageID.825].

The failure to identify a person by name does not preclude a finding of exhaustion "as long as the prisoner identifies a defendant based on the factual allegations." *Thomas v. Woolum*, 337 F.3d 720, 734 (6th Cir. 2003) ("[A]n inmate need not identify each officer by name when the identities of

10

the particular officers are unknown."); *See Binion v. Glover*, No. 07-13443, 2008 WL 4155355, at *9–11 (E.D. Mich. July 28, 2008) (because MDOC did not rely on the failure to name a named defendant as a basis for rejecting the grievance, the claim was exhausted for staff in the designated category), adopted, 2008 WL 4097407 (E.D. Mich. Aug. 29, 2008); *Shoucair v. Warren*, No. 07-12964, 2008 WL 2033714, at *8 (E.D. Mich. May 9, 2008) ("[N]othing in *Woodford* or *Jones* requires a grievant to somehow identify persons or information he does not have or cannot reasonably obtain.").

Prisoners may not know the names of prison officials responsible for implementing and enforcing such policies. "Where a prisoner is not able to identify all appropriate personnel in compliance with the grievance procedure, there is no failure to exhaust." *See e.g., Merriweather v. Zamora*, 2006 WL 2711809, *9 (E.D.Mich.2006), citing, *Thomas v. Woolum*, 337 F.3d 720, 734 (6th Cir.2003) ("[A]n inmate need not identify each officer by name when the identities of the particular officers are unknown."). The Court finds Garwood properly alerted the appropriate prison officials.

Although the grievance does not identify the health care workers by name, it was precise enough to permit the MDOC to understand Garwood's alleged concern. Garwood's general referral to "health services" in combination with her specific recitations of the date and subject of each of

11

the kites is sufficient to identify the targets of the grievance and allow her to proceed.

### 4. Smith's Grievance

Smith filed grievance WHV-18-04-0987-12D3 in March 2018. She alleged that various medical officers failed to properly treat her rash and understand the "rash issue ongoing." MDOC denied the grievance on May 14, 2018.

Smith filed a Step II grievance appeal; she said the rash was not being properly treated. On July 30, 2018, MDOC denied the appeal. It contended that Smith's medical issues were being addressed.

Smith filed a Step III grievance. On September 18, 2019, MDOC denied that appeal as well; it said the "medical provider is the medical authority and is responsible to manage the treatment plan."

Exhaustion has several prongs to it: timeliness and properly naming wrongdoers are two prongs. Defendants do not dispute timeliness. They do dispute that the grievance was specific enough because it does not include any of the MDOC Defendants named in this lawsuit. Smith concedes that she did not explicitly identify MDOC personnel, but MDOC waived this objection when it did not raise the issue during the grievance procedure.

The failure to identify a person by name does not preclude a finding of exhaustion. *Thomas v. Woolum*, 337 F.3d 720, 734 (6th Cir. 2003). Further, "when the prison elects to address a grievance on the merits rather than invoke a procedural bar to the grievance, the prisoner has exhausted his claim." *Allen v. Shawney*, 2013 WL 2480658 (E.D.Mich. June 10, 2013) (citing *Reed–Bey*, 603 F.3d at 323). Here, MDOC did address the merits of Smith's complaint. For example, notes indicate that health care professionals administered medical treatment and that Smith had a future visit scheduled. [ECF No. 89-4, PageID.803]. It is also noted that she is "not being denied treatment; she is being monitored, tested and followed for her complaints." *Id.*

Additionally, the Step III response from MDOC is that it reviewed "all relevant information." [ECF No. 89-4, PageID.803]. Finally, the record does not suggest at all that MDOC chose to reject any "health services" based medical care grievances as procedurally barred.

A reasonable jury could find that MDOC addressed the merits of Smith's grievance during the appeals procedure, and, because of that, it waived procedural objections based on a failure to specifically identify MDOC Defendants.

**V.    CONCLUSION**

When reviewing the propriety of summary judgment based on failure to exhaust under the PLRA, the Court should "further analyze whether an inmate has made 'affirmative efforts to comply with the administrative procedures' and 'whether those 'efforts to exhaust were sufficient under the circumstances.'" *Does 8-10 v. Snyder*, 945 F.3d 951, 961 (6th Cir. 2019) (quoting *Napier v. Laurel County*, 636 F.3d 218, 223–24 (6th Cir. 2011).

Sufficient appropriate efforts to comply with administrative procedures have been demonstrated by Garwood and Smith to survive summary judgment.

The Court **DENIES** the MDOC Defendants' Motion for Summary Judgment.

**IT IS ORDERED**.

S/ Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated: 8/24/2020